IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| Cary A. Cliff, | § |
| | § |
| Individually and on behalf of all others similarly situated, | § § |
| | § |
| Plaintiff, | § |
| | § |
| vs. | § Civil Action No. 98-520-CIV-FTM-25D |
| | § |
| Payco General American Credits, Inc. and Great Lakes Higher Education Guaranty Corporation, Richard W. Riley, Secretary of the United States Department of Education, | § § § § § |
| Defendants. | |

**Complaint--Class Action**

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiff **Cary A. Cliff** ("Plaintiff" or "Cliff") complains of **Payco General American Credits, Inc.** ("Payco"), **Great Lakes Higher Education Guaranty Corporation** ("Great Lakes") [jointly called "Defendants"], and **Richard W. Riley, Secretary of the United States Department of Education** ("Secretary"), by way of a class action, and shows the Court the following:

**Introduction**

1. This is a class action for damages and injunctive relief for Defendants' violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*



("FDCPA") and the Florida Consumer Collection Practices Act, Florida Statutes § 559.55 *et seq.* ("Florida Act"). This action also seeks to enjoin violations of 20 U.S.C. § 1095a *et seq.* and to challenge the constitutionality of that statute, along with interpretive regulations issued by the Secretary.

2. Cliff brings this class action on behalf of himself and on behalf of all other consumers in Florida who have been subjected to similar practices, seeking declaratory relief, damages, restitution, and a permanent injunction forcing Defendants to stop their illegal efforts to collect student loans.

3. Payco is one of the largest collection agencies in the country. Its success is in large part founded on its willingness to violate both state and federal laws regulating the conduct of debt collectors, by engaging in a variety of abusive and deceptive practices. This case is an example of its wrongful practices. This suit seeks damages and injunctive relief against Payco.

4. Great Lakes serves the dual role of guaranteeing student loans and acting as a collection agency for some of those loans. Under 20 U.S.C. § 1095a *et seq.*, it is authorized to garnish wages under certain circumstances. In violation of the constitutional guarantees of due process of law, it has unlawfully delegated its authority to private collection agencies such as Payco. This suit seeks damages and injunctive relief against Great Lakes.

5. The Department of Education has failed to insure that collections of student loan debts through garnishment meet minimal constitutional due process requirements. The Secretary is sued in his official capacity seeking injunctive relief only.

**Jurisdiction and Venue**

6. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper in the Middle District of Florida, under 28 U.S.C. § 1391(b), (c) & (e).

**Parties**

8. Plaintiff Cary A Cliff is a natural person who resides in Naples, Florida. Cliff and each of the other members of the class are "consumers" as defined in FDCPA and the Florida Act.

9. Defendant Payco is a for-profit Delaware corporation that regularly does business in this judicial district and elsewhere in this state. Payco regularly collects or attempts to collect debts owed or due or asserted to be owed or due another. Payco is a debt collector as defined by FDCPA and the Florida Act.

10. Defendant Great Lakes is a non-profit Wisconsin corporation. Great Lakes is engaged in the practice of guaranteeing and collecting student loans in this judicial district and elsewhere in this state. It regularly collects or attempts to collect debts owed or due or asserted to be owed or due another. Great Lakes is a debt collector as defined by FDCPA and the Florida Act.

11. Richard W. Riley, sued in his official capacity as Secretary of the United States Department of Education, may be served by the following means: (1) by serving the United States Attorney for the Middle District of Florida; (2) by serving by certified or

registered mail Janet Reno, Attorney General of the United States, Washington, D.C.; and (3) by serving by certified or registered mail Richard W. Riley, Secretary of the Department of Education, Washington, D.C.

## Class Action Allegations

12. Cliff sues on his own behalf and, as class representative, sues on behalf of all other consumers in Florida who have been the victims of the illegal acts of the Secretary, Payco and/or Great Lakes in violation of the FDCPA, the Florida Act, and/or the United States Constitution, as detailed below, beginning one year prior to the date the Complaint was filed.

13. Cliff brings this lawsuit as a class action because (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) Cliff's claims are typical of the claims of the class, and (4) Cliff can and will fairly and adequately protect the interests of the class. Questions of whether, and to what extent, Defendants engaged in the practices described herein, whether they did so intentionally or knowingly, and whether they thereby violated the law will be common to all members of the class.

14. It is appropriate to maintain this lawsuit as a class action for injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendants acted on grounds generally applicable to the class, thereby making injunctive and declaratory relief appropriate with respect to the class as a whole.

15. It is also appropriate to maintain this lawsuit as a class action for damages pursuant to Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact

common to the members of the class predominate over questions affecting only individual members and because a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

16. Cliff's claims are typical of the claims of the class as a whole. He can and will fairly and adequately protect the interests of the class, because he has retained experienced counsel to represent the class, he has no conflict of interest with the class, and he brings this lawsuit specifically for the protection of consumers who have been and will be defrauded by these practices, and not solely to recover his personal damages.

### Acts of Agents

17. Whenever in this Complaint it is alleged that a Defendant did any act, it is meant that the Defendant performed or participated in the act, or the officers, agents, or employees of the Defendant performed or participated in the act on behalf of and under the actual, vicarious, or apparent authority of the Defendant.

### Conditions Precedent

18. All conditions precedent to the filing of this case have been performed, have occurred, or have been satisfied.

### Facts

19. Cary A. Cliff accumulated approximately $29,000.00 in several student loans during his seven years of college and law school. In 1988, he consolidated those loans through a federal consolidation program run by Sallie Mae on which Great Lakes was a guarantor. Sallie Mae is a financial services corporation that specializes in funding

education. It currently funds approximately 40% of all insured student loans

20. After consolidation, Cliff received periodic offers from Sallie Mae to defer his loan for up to six months. In the fall of 1995, Cliff accepted an offer of deferral in order to finance his upcoming wedding. Sallie Mae told him that no additional documentation was required for this deferment and that he would be notified by mail when to resume payments.

21. Instead of a notice to resume payments, the next notice Cliff received from anyone relating to his student loan was a notice of default from Great Lakes. When he contacted Great Lakes by telephone to attempt to clear up the misunderstanding, Great Lakes refused to discuss his loan and insisted that he contact Payco.

22. Cliff telephoned Payco, which advised him that his only option was to enter into a rehabilitation program. Since he was told that this was his only option, Cliff took it.

23. Payco included in the repayment amount, without Cliff's authorization, approximately $5,000.00 in collection fees. When Cliff tried to contest these fees, he was rebuffed.

24. In October, 1997, Cliff received a communication ostensibly from Great Lakes, but possibly generated by Payco, styled "NOTICE PRIOR TO WAGE WITHHOLDING" that was "issued" on October 22, 1997 ("Notice"). The Notice represented that Cliff currently owed $35,935.61 and told Cliff that unless he established a new written repayment agreement with Payco on or before November 21, 1997, Cliff's employer would be ordered to begin garnishment of Cliff's wages.

25. The Notice advised Cliff that he could request a hearing concerning *only* (1) the existence of the debt, (2) the amount of the debt, or (3) the terms of his repayment schedule. Although federal law provides for other bases for cancelling or deferring a debt, the Notice did not advise Cliff of those rights. By stating only these three limited grounds for requesting a hearing, the Notice misrepresented Cliff's rights under the law.

26. Cliff timely sought a telephone hearing before garnishment, by completing and returning to Payco a form provided with the Notice. In that form, he stated that he wished to be heard regarding the terms of his repayment schedule and that he contested the amount of the debt because of the inclusion of the collection fees.

27. Despite the fact that Cliff timely sought a pre-garnishment hearing, Payco sent Cliff a letter dated December 16, 1997, which denied Cliff's request for a hearing without explanation and further represented to Cliff that nonpayment of the alleged debt would result in an Administrative Wage Garnishment without further notice for a hearing unless he made other arrangements. This letter stated that the amount of the debt was now $36,326.48 and was going up daily. This amount included $4,981.24, which the letter represented was required by federal regulation. This representation is false.

28. This letter did not advise Cliff of his rights pursuant to FDCPA § 1692g to dispute the debt and receive verification of the debt. On information and belief, Cliff never received the notice advising him of those rights.

29. On or about January 20, 1998, Payco issued an ORDER OF WITHHOLDING FROM EARNINGS ("Order") and served it on Cliff's employer. The Order directed the employer to garnish Cliff's wages and to send the money direct to Payco.

30. Cliffs began garnishing his wages in the amount of $110.00 per week in February 1998. The weekly garnishment continues to this day.

31. The Order deceptively advises the employer to withhold "10% of debtors disposable pay" or an amount permitted by 15U.S.C.§1673. This method of withholding is conflicts with 15U.S.C.ß 1673 and relevant regulations, and will result in over withholding in many instances. In 15 U.S.C. ß 1673, Congress enacted limitations on wage garnishment, providing that the maximum amount of disposable earnings "subjected to garnishment may not exceed . . . (2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable.". The effect of this section is to reduce the permissible amount withheld below the 10% required by Payco, for many debtors. For example, although 10% of Cliff's weekly disposable pay (and the amount currently being withheld weekly pursuant to the Payco's Garnishment Order) is $110.00, which is within the limits of 29 U.S.C. § 206, on information and belief many other members of the class will have excessive amounts of their earnings subject to garnishment.

32. The practices of Payco and Great Lakes violated the due process guarantees of the United States Constitution; the protections against wrongful garnishment provided by the Higher Education Act of 1965, 20 U.S.C. 1095a; various provisions of

the Fair Debt Collection Practices Act, 15 USC 1692 *et seq.*; and various provisions of the Florida Consumer Collection Practices Act, Florida Statutes § 559.55 *et seq*. By enactment of policies that encourage and permit these practices, the Secretary has exceeded his lawful authority and has contributed to the denial of due process.

33. On information and belief, the practices of Payco and Great Lakes in collecting Cliffís debt are typical of their student loan garnishment practices in general.

### First Cause Of Action
### Request For Declaratory Judgment

34. Cliff seeks a declaratory judgment from this Court pursuant to 28 U.S.C. § 2201 & 2202, declaring that, as to Payco: (1) Payco regularly engages in the practices described herein; (2) Paycoís practices violate the FDCPA and the Florida Act.

35. Cliff seeks a declaratory judgment from this Court pursuant to 28 U.S.C. § 2201 and 2202, declaring that (1) Great Lakes regularly engages in the practices described herein; (2) Great Lakes practices violate the FDCPA and the Florida Act, and (3) Great Lakes unlawfully delegated its administrative wage garnishment authority and violated 20 U.S.C. § 1095a *et seq.*, thereby violating the Fifth Amendmentís requirement of due process of law.

36. Cliff seek a declaratory judgment from this Court pursuant to 28 U.S.C. § 2201 and 2202, declaring that the federal statute codified at 20 U.S.C. § 1095a *et seq.* is unconstitutional on its face and as applied under the circumstances of this case, because it violates procedural due process requirements of the Fifth Amendment.

## Second Cause of Action
### Request For Relief Pursuant To FDCPA

37. By the actions set forth above, Payco and Great Lakes violated the FDCPA, which was the proximate or producing cause of damages to Cliff and the other class members.

38. As a result of the above violations of the FDCPA, Payco and Great Lakes are liable to Cliff for his actual damages, statutory damages, and costs and reasonable attorney's fees.

39. On behalf of himself and of each class member, Cliff seeks an order of the Court directing Payco and Great Lakes to restore to him and all other class members all money obtained by Payco or Great Lakes through garnishment.

40. In addition, Cliff seeks on behalf of all other class members, without regard to minimum individual recovery, an award in the amount of the lesser of $500,000.00 or 1% of the separate net worths of Payco and Great Lakes.

## Third Cause Of Action
### Request For Relief Pursuant To Florida Consumer Collection Practices Act

41. By the actions set forth above, Payco and Great Lakes violated the Florida Act, which was the proximate or producing cause of damages to Cliff and the other class members.

42. As a result of the above violations of the FDCPA, Payco and Great Lakes are liable to Cliff for his actual damages, statutory damages, and costs and reasonable attorney's fees.

43. On behalf of himself and of each class member, Cliff seeks statutory damages of $500.00 for each violation of the Florida Act by Payco and Great Lakes.

44. On behalf of himself and of each class member, Cliff seeks orders, for which he hereby prays, enjoining future violations of the Florida Act by Payco and Great Lakes.

### Relief Sought

45. Cliff individually seeks to recover his actual damages sustained as the result of Defendants' illegal acts, as well as statutory civil penalties, for which he hereby prays. Cliff also seeks equitable relief.

46. Cliff further seeks statutory damages, restitution, and equitable relief on behalf of the class.

47. Cliff further seeks attorney's fees for himself and the class that are reasonable in relation to the amount of work expended, and his costs.

### Prayer

THEREFORE, plaintiff respectfully prays that this Court:

1. Upon notice and hearing, but at the earliest possible date, certify this action as a class action.

2. Upon final trial of this cause, enter a Declaratory Judgment declaring that the practices complained of herein are illegal and a Permanent Injunction enjoining Defendants from engaging in the illegal practices set forth herein.

3. Upon final trial of this cause, award plaintiff and the members of the class judgment for their damages and statutory civil penalties as set forth herein. Plaintiff

further prays that these damages be multiplied pursuant to the provisions of the law.

4. Award punitive damages in an amount necessary to punish Defendants for their conduct, in amount not less than $1,000,000.00.

5. Award plaintiff and the class attorney's fees and costs of court.

6. Award pre-judgment and post-judgment interest at the maximum rate permitted at law or at equity.

7. Grant plaintiff and the class all other relief to which they may show themselves and the class entitled.

### Demand for Jury Trial

Please take notice that Plaintiff demands trial by jury in this action.

Respectfully submitted,

| | |
|---|---|
| STEPHEN GARDNER | THOMAS S. HEIDKAMP |
| Texas Bar Number 07660600 | Florida Bar Number 914118 |
| Law Office of Stephen Gardner | Leasure & Heidkamp |
| Woodall Rodgers Tower, Suite 1750 | 1342 Colonial Blvd., Suite H-57 |
| 1845 Woodall Rodgers Freeway | Fort Myers, Florida 33907 |
| Dallas, Texas 75201 | Telephone:   941/275-7797 |
| Telephone:   214/954-0663 | Telecopier:   941/275-6856 |
| Telecopier:   214/871-8957 | |

KARL G. FAERBER
Georgia Bar Number 253935
Faerber Law Firm, P.C.
930 Pleasant Hollow Tr., Suite 1
Alpharetta, Georgia 30004
Telephone:   770/667-6000
Telecopier:   770/667-6001

Attorneys for Plaintiff and the Class,

By: _____
THOMAS S. HEIDKAMP